UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x

GEOFFREY TEED and KIYOKO TEED,

             Plaintiffs,

   - against -

REPRO LAB INC.,

             Defendant.

------------------------------------------------x

07 Civ. 4097 (TPG)

**OPINION**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/17/09

      Plaintiffs Geoffrey Teed and Kiyoko Teed bring this action against defendant Repro Lab, Inc. concerning Repro Lab's destruction of a vial of semen that it was storing for plaintiffs. Plaintiffs assert the following state law claims against Repro Lab: (1) malpractice, (2) negligence, (3) negligent infliction of emotional distress, (4) intentional infliction of emotional distress, (5) breach of contract, and (6) promissory estoppel.

      Repro Lab moves to dismiss plaintiffs' complaint, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim. Plaintiffs treat Repro Lab's motion as a motion for summary judgment, because Repro Lab submits matters outside the pleadings in support of its motion.

      The motion is properly treated as a motion for summary judgment. The motion is denied.

## FACTS

Repro Lab is a tissue bank that offers sperm cryopreservation and storage for client depositors.  In December 1996, plaintiff Geoffrey Teed was diagnosed with non-Hodgkin's Lymphoma, and was referred to Repro Lab for cryopreservation and storage of his semen, because the chemotherapy treatments he would undertake would render him sterile.

On or about January 13, 1997, Geoffrey Teed entered into an agreement with Repro Lab.  He deposited two vials of semen on January 13 and three vials on January 22.  Storage was to be for one year.  This agreement was memorialized in two contracts.  First, on January 13, 1997, Repro Lab and Geoffrey Teed signed the "Ultimate Disposition of Specimens" form, which states, in relevant part:

> **In the event of my death:**
>
> \*\*\*
>
> > I authorize and instruct Repro Lab to destroy all semen vials in its possession
>
> \*\*\*
>
> **In the event my spouse and I both die:** *(if applicable)*
>
> > I authorize and instruct Repro Lab to destroy all semen vials in its possession
>
> \*\*\*
>
> This represents the entire agreement between parties concerning the subject matter, and there are no understandings, agreements or representations other than as herein set forth. This agreement shall be binding upon the

parties and their respective assigns, heirs, executors and administrators.

Then, on March 7, 1997, Geoffrey Teed signed the "Cryopreservation and Storage Agreement," which states, in relevant part:

> Patient's Name: **Geoffrey Teed**
>
> \*\*\*
>
> Repro Lab certifies that on **January 13, 1997** [blank space] semen vials of the above named patient are cryopreserved and stored at our facility for a period of [blank space] year(s). The fee for the above storage period is **$300** and will be paid by the patient when signing this contract.
>
> \*\*\*
>
> **This agreement between parties will terminate and Repro Lab's responsibility will cease if any of the following events occur**:
>
> A) Release of all stored semen vials by written authorization of the patient.
>
> B) Written consent of the patient authorizing destruction of all specimens then presently stored.
>
> C) Expiration of the above storage period. *If the patient wants to extend the storage period, a new agreement shall be signed and storage fees shall be paid prior to the expiration date of this present agreement.*

The March 7 document does not bear Repro Lab's signature, although Repro Lab does not deny that it entered into this contract. Also in this document, the spaces for the number of vials and the number of

years are left blank. However, the parties agree that this was a contract for the storage of five vials for one year.

When this storage contract elapsed, the parties renewed the storage period for another year, and Geoffrey Teed signed a new "Ultimate Disposition of Specimens" form, dated April 21, 1998. This form provided, in relevant part:

> **In the event of my death:**
>
>> I agree that my spouse will have the sole right to make decisions regarding the disposition of my semen samples. I authorize Repro Lab to release my specimens to my legal spouse **Kiyoko [illegible].**
>
>> \*\*\*

This obviously represented a change from the "Ultimate Disposition of Specimens" form signed on January 13, 1997. Also, Geoffrey Teed did not this time authorize Repro Lab to destroy all semen vials in its possession "in the event my spouse and I both die."

Geoffrey Teed also signed the "Cryopreservation and Storage Agreement Renewal" on April 21, 1998. This agreement was identical to the prior storage agreement except for one section, which stated:

> ***This present agreement will be effective on January 13, 1998.***
> Repro Lab certifies that on the effective date semen vials of the above named patient are cryopreserved and stored at our facility for a period of **1** year(s). The fee for the above storage period is **$350** and will be enclosed with this contract prior to **January 13, 1998**.

ReproLab received payment on April 28, 1998, but only in the amount of $150.00. Along with this payment, Geoffrey Teed sent a letter to Repro Lab, dated April 24, 1998, that stated, "Please apply this installment of $150.00 to my balance due of $350.00. I will forward a final installment of $200.00 before 6/1/98. Please contact me @ 203 851 1880 if this arrangement presents a problem." Later, in a letter dated September 21, 1998, Repro Lab informed Geoffrey Teed that payment of $150.00 (not $200) was due for storage beginning January 1998, and asked that payment be made by October 5, 1998. Repro Lab received a payment of $150.00 on October 13, 1998.

After this second storage contract elapsed, the parties again renewed the storage for a number of subsequent periods. However, none of these subsequent renewals was memorialized in writing, even though the second storage contract provides that new agreements must be signed to extend the storage period. Instead, it appears that beginning in March 1999, Repro Lab would simply send letters and bills to Geoffrey Teed requesting storage fees for continued storage, and thereafter, payments would be made in varying amounts. Plaintiffs assert that every letter from Repro Lab requesting payment was accompanied by a Disposition Form that had to be completed, notarized and returned to Repro Lab before it would destroy Geoffrey Teed's specimen. Neither party has provided the court with a copy of a Disposition Form or a description of what it says.

In 2000, Geoffrey Teed authorized the transfer of several vials of semen to the Center for Advanced Reproductive Medicine. Accordingly, after July 12, 2001, Repro Lab retained in its possession only one vial of semen belonging to Geoffrey Teed.

On November 10, 2004, Repro Lab sent Geoffrey Teed the following letter, marked "Final Notice":

> Re: Storage fee
> Due: Nov. 25, 2004
>
> Due: $400.00
>
> Please submit payment by the due date. If payment is not received, Repro Lab will be under no further obligations to continue storing your specimens.
>
> If you are no longer interested in storing your specimens please complete, sign, notarize and return the enclosed Disposition Form. Furthermore, you will still be responsible to pay an overdue storage fee of $150.00 for July-November, 2004.
>
> The storage option plans are the following: $200.00 for 6 months, $400.00 for one year, $960.00 for 3 years and $1600.00 for 5 years. Kindly select an option and submit the appropriate payment. All storage fees are not refundable.

The return receipt card shows that plaintiff Kiyoko Teed received the letter on November 15, 2004. Again, the court has not been provided with a copy of the Disposition Form.

Plaintiffs did not make payment to Repro Lab in November 2004. On December 22, 2004 Repro Lab destroyed the remaining vial of semen in its possession that belonged to Geoffrey Teed. Repro Lab did not

notify plaintiffs in advance, or even promptly after the destruction. On December 28, 2004, Repro Lab received a check in the sum of $400 for continued storage. On December 30, 2004, Repro Lab called and informed plaintiff Kiyoko Teed that the remaining vial of semen had been destroyed. Plaintiff Geoffrey Teed is currently sterile due to cancer treatment.

## DISCUSSION

Repro Lab moves to dismiss plaintiffs' complaint, pursuant to Rule 12(b)(6), and submits an affidavit and a number of exhibits, in support of this motion. Plaintiffs treat Repro Lab's motion as one for summary judgment, and submit a memorandum of law opposing dismissal, and attach supporting affidavits and exhibits.

It is well-settled that when matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment, and all parties will be given reasonable opportunity to present all material that is pertinent to the motion. Fed. R. Civ. P. 12(d).

Here, both parties were given a reasonable opportunity to submit, and did submit, evidence outside the pleadings relevant to this motion. Therefore, the motion is properly considered a motion for summary judgment.

The standards regarding the treatment of summary judgment motions are familiar and there is no need for repetition here.

Repro Lab's argument in support of summary judgment is that it complied with its obligations under the New York State Department of Health Code, and therefore cannot be held liable for properly disposing of Geoffrey Teed's specimen. Repro Lab cites New York State Department of Health Code, 10 NYCRR 52-8.7(f), entitled "Collection, Storage, and Disposition of Reproductive Tissue," which provides:

> Reproductive tissue stored for a client-depositor shall not be destroyed or released for other purposes as a result of nonpayment of storage fees or for any other reasons, without documentation that the client was given at least 30 days written notice by certified mail, return receipt requested.

This Health Code rule did not go into effect until November 1, 2000, but was in effect in 2004 when Geoffrey Teed's semen was destroyed.

The portion of the Health Code rule relevant to the present case is that dealing with destruction of reproductive tissue. It is conceded that semen is reproductive tissue. It is clear beyond any question that the 30 days written notice referred to is 30 days notice of destruction. The letter of November 10, 2004, relied on by Repro Lab, said nothing about possible destruction. It did not give the notice required by the Health Code.

The "Cryopreservation and Storage Agreement" forms, signed on March 7, 1997 and April 21, 1998, said nothing about destruction of semen in the event of nonpayment of the fee. The only provision in these

forms relating to destruction is to the effect that one of the events that would terminate the agreement would be the written "consent of the patient authorizing destruction." The agreement could also be terminated at the expiration of the storage period, and presumably it could terminate for nonpayment of the fee, but there was no provision that such events gave Repro Lab the right to destroy the semen as distinct from returning it to the owner.

The "Ultimate Disposition of Specimens" form, signed on January 13, 1997, had authorized Repro Lab to destroy the semen if Geoffrey Teed died or he and his wife died. Even these authorizations, which of course did not apply to nonpayment of the fee, were withdrawn in the new "Ultimate Disposition of Specimens" form of April 21, 1998.

In the November 10, 2004 letter, Geoffrey Teed was notified that he could sign a "Disposition Form" if he was no longer interested in storing his specimens. What the Disposition Form dealt with, the court does not know. In any event, there is no evidence that Geoffrey Teed submitted it to Repro Lab.

## CONCLUSION

Repro Lab's motion for summary judgment is denied.

Dated: New York, New York
       March 17, 2009

SO ORDERED

_____
THOMAS P. GRIESA
U.S.D.J.